_____

| | |
|---|---|
| **EVANSTON INSURANCE COMPANY,** : | |
| : | **CIVIL ACTION** |
| **Plaintiff,** : | |
| **v.** : | **NO.:** |
| : | |
| **ADRIENNE MURRAY, MAJOR** : | |
| **RAINEY, A & M REAL ESTATE OF** : | |
| **PITTSBURGH, LLC, and A FOR** : | |
| **THE PEOPLE INSURANCE** : | **COMPLAINT** |
| **AGENCY, INC.** : | |
| **Defendants.** : | |

_____:

      Plaintiff, Evanston Insurance Company ("Evanston"), by and through its attorneys, Rebar Bernstiel, respectfully submits this Complaint and in support thereof avers as follows:

## NATURE OF THE ACTION

      1.     This action is brought pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201 and Fed. R. Civ. P. 57, and seeks this Court's declaration of the rights, duties, and obligations of the parties arising out of a contract of insurance that Evanston issued to Defendant Adrienne Murray ("Murray").

      2.     The action also is brought pursuant to 18 Pa. C.S.A. §4117(g), 1990 Feb. 7, P.L. 11, No. 6, §2, which is more commonly known as the Pennsylvania Insurance Fraud Statute.

## PARTIES

      3.     Evanston is a business corporation that is incorporated in the State of Illinois.

      4.     Evanston maintains its principal place of business in the State of Illinois.

      5.     Upon information and belief, Murray is an individual who resides in the judicial district in the Commonwealth of Pennsylvania in which this Court is situated.

6.     Upon information and belief, Defendant Major Rainey ("Rainey") is an individual who resides in the judicial district in the Commonwealth of Pennsylvania in which this Court is situated.

7.     Upon information and belief, Defendant A & M Real Estate of Pittsburgh, LLC ("A&M") is a limited liability company that is incorporated in the Commonwealth of Pennsylvania.

8.     Upon information and belief, A&M and maintains a registered office at 2407 Wylie Avenue, Apartment 21, Pittsburgh, Pennsylvania

9.     Upon information and belief, Defendant A for the People is a business corporation that is incorporated in the Commonwealth of Pennsylvania.

10.     Upon information and belief, A for the People Insurance Agency, Inc. ("A for the People") maintains its principal place of business at 2514 Wylie Avenue in Pittsburgh, Pennsylvania.

## JURISDICTION & VENUE

11.     Under 28 U.S.C. § 1332(a), this Court has jurisdiction over this matter because (a) there is complete diversity of citizenship between the parties and (b) more than $75,000, exclusive of interests and costs is in controversy.

12.     Under 28 U.S.C. §1391(b)(2), venue is proper before this Court because a substantial part of the events or omissions giving rise to the claim occurred within this judicial district and because the property that is the subject of the dispute is situated within this judicial district.

13.     Upon information and belief, Murray is domiciled in the Commonwealth of Pennsylvania.

14.     Murray, therefore, is subject to the general jurisdiction of the Commonwealth.

15.     Under Fed. R. Civ. P. 4(k)(1)(A), personal jurisdiction over Murray is proper.

16.     Upon information and belief, Rainey is domiciled in the Commonwealth of Pennsylvania.

17.     Rainey, therefore, is subject to the general jurisdiction of the Commonwealth.

18.     Under Fed. R. Civ. P. 4(k)(1)(A), personal jurisdiction over Rainey is proper.

19.     Upon information and belief, Murray is domiciled in the Commonwealth of Pennsylvania.

20.     Murray, therefore, is subject to the general jurisdiction of the Commonwealth.

21.     Under Fed. R. Civ. P. 4(k)(1)(A), personal jurisdiction over Murray is proper.

22.     Upon information and belief, A for the People is incorporated in the judicial district in the Commonwealth within which this Court is situated.

23.     Upon information and belief, A for the People maintains its principal place of business in the judicial district in the Commonwealth within which this Court is situated.

24.     A for the People, therefore, is subject to the general jurisdiction of the Commonwealth.

25.     Under Fed. R. Civ. P. 4(k)(1)(A), personal jurisdiction over A for the People is proper.

**FACTS**

26.     Upon information and belief, at all times relevant hereto, A&M owned real property situated at 2407 Wylie Avenue, Pittsburgh, Pennsylvania (the "Property").

27.     Upon information and belief, Murray has an ownership interest in A&M.

28.     Upon information and belief, Rainey has an ownership interest in A&M.

29.     Upon information and belief, at all relevant times hereto, Murray did not own the Property.

30.     Upon information and belief, at all relevant times hereto, Rainey did not own the Property.

31.     Upon information and belief, Murray created an agency relationship with A for the People.

32.     Upon information and belief, the scope of the agency for which Murray retained A for the People to procure an insurance policy for the real property owned by A&M situated at 2407 Wylie Avenue, Pittsburgh, Pennsylvania.

33.     Upon information and belief, A for the People prepared for Murray within the scope of its agency relationship a Commercial Insurance Application.

34.     A true and accurate copy of this Commercial Insurance Application is attached hereto as **Exhibit 1**. Non-relevant personal information has been redacted from this document.

35.     The Commercial Insurance Application that A for the People prepared as an agent for Murray was dated May 27, 2017. *See* Ex. 1.

36.     The Commercial Insurance Application that A for the People prepared as an agent for Murray was for the Property. *See id.*

37.     In the Commercial Insurance Application, A for the People, in its capacity as an agent for Murray, represented that, *inter alia*, the Property had a two-unit dwelling with a store front. *See id.*

38.     In the Commercial Insurance Application, A for the People, in its capacity as an agent for Murray, represented that, *inter alia*, the building description was "Barber Shop W/Tenant OCC Unit Above." *See id.*

39.    In the Commercial Insurance Application, A for the People, in its capacity as an agent for Murray, represented that Murray's interest in the Property was "owner." *See id.*

40.    In the Apartment Supplemental Application, A for the People in its capacity as an agent for Murray, represented that, *inter alia*, the condition of the property was "Average." *See id.*

41.    On May 30, 2017, Mr. William Hawthorne ("Mr. Hawthorne") of A for the People, in its capacity as an agent for Murray, sent an email to Ms. Erika Trimble ("Ms. Trimble") of USG Insurance Services, Inc. ("USG").

42.    A true and accurate copy of the email from Mr. Hawthorne to Ms. Trimble is attached hereto as **Exhibit 2**. Non-relevant personal information has been redacted from this document.

43.    At all relevant times, USG served as the agent for Plaintiff Evanston Insurance Company.

44.    The scope of the agency relationship between Evanston and USG was such that USG was authorized, *inter alia*, to accept applications for insurance policies as an agent for Evanston.

45.    In his capacity as an agent for Murray, Mr. Hawthorne attached Murray's unsigned application to the email to Ms. Trimble, who received the email and attached application in her capacity as an agent for Evanston. *See* Ex. 2.

46.    On May 30, 2017, Murray had not executed the Commercial Insurance Application when Mr. Hawthorne, in his capacity as an agent for Murray, emailed the Commercial Insurance Application to Ms. Trimble, who received the unsigned Commercial Insurance Application in her capacity as an agent for Evanston. *See id.*

47.     On June 2, 2017 at 11:47 a.m., Ms. Trimble, in her capacity as an agent for

Evanston, sent an email to Ms. Regina Johnson ("Ms. Johnson") of A for the People, in her

capacity as an agent for Murray.

48.     A true and accurate copy of this email is attached hereto as **Exhibit 3**.

49.     In her June 2, 2017 email, Ms. Trimble, in her capacity as an agent for Evanston,

wrote, in pertinent part, as follows:

> Thank you for your business. We are pleased to present you with the attached
> Markel package proposal and Premium Finance Quote. Sorry in the delay in
> getting this quote to you [sic] I had to get it approved and I just got the okay.
> Please note that this is a different carrier as endurance [sic] did not want to renew,
> so there may be some difference in coverages. Please review. If you have any
> questions [sic] please feel free to give me a call.
>
> Ex. 3.

50.     On June 2, 2017, Murray executed the Commercial Insurance Application.

51.     A true and accurate copy of the executed Commercial Insurance Application is

attached hereto as **Exhibit 4**. Non-relevant personal information has been redacted from this

document.

52.     On June 3, 2017, Murray executed a document titled "Notice of Terrorism

Insurance Coverage."

53.     A true and accurate copy of the Notice of Terrorism Insurance Coverage is

attached hereto as **Exhibit 5**.

54.     The Notice of Terrorism Insurance Coverage provides, in pertinent part, that

under the Terrorism Risk Insurance Act, as amended, Murray had "a right to purchase insurance

coverage for losses resulting from acts of terrorism, *as defined in Section 102(1) of the Act." See*

Ex. 5.

55.     The Notice of Terrorism Insurance Coverage further provides, in pertinent part, that Murray could have elected "to purchase terrorism coverage for a prospective premium of $ _____" or could have declined "to purchase terrorism coverage for certified acts of terrorism." *Id.*

56.     Murray declined to purchase terrorism coverage. *See id.*

57.     Murray signed her name over the header "Policyholder/Applicant Signature" on the Notice of Terrorism Insurance Coverage form. *See id.*

58.     At or about 3:00 a.m. on June 4, 2017, the building at the Property was damaged by fire.

59.     At 3:14 a.m. on June 4, 2017, a call was placed to 911 to report fire damage to the Property.

60.     At 6:50 p.m. on June 4, 2017, A for the People, in its capacity as an agent for Murray, sent a fax to USG, in its capacity as an agent for Evanston.

61.     A true and accurate copy of this fax is attached hereto as **Exhibit 6**. Non-relevant personal information has been redacted from this document.

62.      The fax that A for the People transmitted, in its capacity as an agent for Murray, to USG, in its capacity as an agent for Evanston, attached the executed Notice of Terrorism Insurance Coverage. *See* Ex. 6.

63.     The fax that A for the People, in its capacity as an agent for Murray, on June 4, 2017 at 6:50 p.m. had the following hand-written message: "Please bind coverage effective 6/4/17."

64.     The hand-written message on the fax was signed and dated June 3, 2017.

65.     As of 6:50 p.m. on June 4, 2017, Murray had not disclosed that the Property had sustained a fire loss. *See id.*

66.     As of 6:50 p.m. on June 4, 2017, A for the People, in its capacity as an agent for Murray, had not disclosed that the Property sustained a fire loss. *See id.*

67.     At 1:59 p.m. on June 6, 2017, Mr. Hawthorne, in his capacity as an agent for Murray, sent an email to Ms. Trimble, in her capacity as an agent for Evanston.

68.     A true and accurate copy of this email is attached hereto as **Exhibit 7**.

69.     In his June 6, 2017 email, Mr. Hawthorne, in his capacity as an agent for Murray, wrote, "Any word on the binding?"

70.     At 3:54 p.m. on June 6, 2017, Ms. Trimble, in her capacity as an agent for Evanston, sent an email to Mr. Hawthorne, in his capacity as an agent for Murray.

71.     A true and accurate copy of this email is attached hereto as **Exhibit 8**.

72.     In her June 6, 2017 email, Ms. Trimble, in her capacity as an agent for Evanston wrote, in pertinent part, "I still need the signed and dated acord [sic] and supplemental [sic] and confirmation that there is no subsidized living or student housing taking place at the locations. Can you forward me the email of when you sent the original bind request over?" Ex. 8.

73.     At 10:57 a.m. on June 7, 2017, Mr. Hawthorne, in his capacity as an agent for Murray, sent an email to Ms. Trimble.

74.     A true and accurate copy of this email is attached hereto as **Exhibit 9**.

75.     In his June 7, 2017 email, Mr. Hawthorne, in his capacity as an agent for Murray, wrote, "Out of town. [sic] Regina will have to complete. Sent bind request by fax on Saturday [June 3, 2017]. [sic]" Ex. 9.

76.     At 3:41 p.m. on June 7, 2017, Ms. Johnson, in her capacity as an agent for Murray, sent an email to Ms. Trimble, in her capacity as an agent for Evanston.

77.     A true and accurate copy of this email is attached hereto as **Exhibit 10**.

78.     In her June 7, 2017 email, Ms. Johnson wrote, in her capacity as an agent for Murray, in pertinent part, "Please find attached the signed Acords [sic] 125, 126 & 140 and the Supplemental application and the Tria [sic] (again). Let me know if you need anything else." Ex. 10.

79.     As of the transmission of the email at 3:41 p.m. on June 7, 2017, Murray had not disclosed that the Property sustained a fire loss on June 4, 2017. *See id.*

80.     As of the transmission of the email at 3:41 p.m. on June 7, 2017, A for the People, in its capacity as an agent for Murray, had not disclosed that the Property had sustained a fire loss on June 4, 2017. *See id.*

81.     At 8:51 a.m. on June 8, 2017, Ms. Trimble, in her capacity as an agent for Evanston, sent an email to Ms. Johnson in her capacity as an agent for Murray.

82.     A true and accurate copy of this email is attached hereto as **Exhibit 11**.

83.     In her June 8, 2017 email, Ms. Trimble, in her capacity as an agent for Evanston, wrote, in pertinent part, "On the property acords [sic] sent over for binding for location 2 [sic] it says [sic] Property for [sic] 180,000 and on the quote [sic] I have the 180,000 [sic] as building coverage. As well as [sic], in the remarks [sic] it is stating that there have been no updates to the utilities [sic] can you please explain due to there being updates listed in the building improvements section of the 140. Can you also varify [sic] that the commercial tenants carry equal or greater limits with the insured named as an A/I." Ex. 11.

84.     At 9:44 p.m. on June 8, 2017, Ms. Johnson, in her capacity as an agent for Murray, sent an email to Ms. Trimble, in her capacity as an agent for Evanston.

85.     A true and accurate copy of this email is attached hereto as **Exhibit 12**.

86.     In her June 8, 2017 email, Ms. Johnson, in her capacity as an agent for Murray, wrote, in pertinent part, "As Bill is out of town, I'm not sure, but I think 'no updates to the utilities' should read 'no recent updates' Are the words building and property being used interchangeably? I don't think the Tenant insurance can be verified until Monday, but I will try tomorrow. Would a verbal from our client be sufficient?" Ex. 12.

87.     At 8:40 a.m. on June 9, 2017, Ms. Trimble, in her capacity as an agent for Evanston, sent an email to Ms. Johnson, in her capacity as an agent for Murray.

88.     A true and accurate copy of this email is attached hereto as **Exhibit 13**.

89.     In her June 9, 2017 email, Ms. Trimble, in her capacity as an agent for Evanston, wrote, in pertinent part, "A verbal would be sufficient until you have the written proof [sic] I will just have it listed as [sic] subject to [sic] on the binder. I think the work property and building may be used interchangeably, but I have to have written confirmation that it is indeed supposed to be Building insurance not Business Property." Ex. 13.

90.     At 10:48 a.m. on June 9, 2017, Ms. Tashanda M. Williams ("Ms. Williams") of A for the People, in her capacity as an agent for Murray, sent an email to Ms. Trimble, in her capacity as an agent for Evanston.

91.     A true and accurate copy of this email is attached hereto as **Exhibit 14**.

92.     In her June 9, 2017 email, Ms. Williams, in her capacity as an agent for Murray, wrote, in pertinent part, "Please see the attached revised accord [sic] 140. Please advise." Ex. 14.

93.     As of the transmission of the email at 10:48 a.m. on June 9, 2017, Murray had not disclosed that the Property sustained a fire loss on June 4, 2017. *See id.*

94.     As of the transmission of the email at 10:48 a.m. on June 9, 2017, A for the People, in its capacity as an agent for Murray, had not disclosed that the Property sustained a fire loss on June 4, 2017. *See id.*

95.     At 2:28 p.m. on June 9, 2017, Ms. Trimble, in her capacity as an agent for Evanston, sent an email to Ms. Johnson, in her capacity as an agent for Evanston.

96.     A true and accurate copy of this email is attached hereto as **Exhibit 15**. Non-relevant personal information has been redacted from this document.

97.     In her June 9, 2017 email, Ms. Trimble, in her capacity as an agent for Evanston, wrote, in pertinent part, as follows:

> Thank you for the order on the above risk. Please review the attached Markel binder and affidavit.
>
> Please send over the either [sic] the confirmation that the commercial tenants are required to carry CGL with equal or greater limits and have the named insured listed as an additional insured. As well as either an updated application or confirmation that you know the deductible is a $1000 for location 2 on the property.
>
> Ex. 15.

98.     At 10:00 a.m. on June 12, 2017, Ms. Johna Koklich ("Ms. Koklich"), an employee of USG, in her capacity as an agent for Evanston, sent an email to Ms. Johnson.

99.     A true and accurate copy of this email is attached hereto as **Exhibit 16**.

100.    In her June 12, 2017 email, Ms. Koklich, in her capacity as an agent of Evanston, provided A for the People, in its capacity as an agent for Murray, with the policy of insurance that Evanston issued to Murray. *See* Ex. 16.

101. A true and accurate copy of the Policy is attached hereto as **Exhibit 17**. Non-relevant personal information and non-relevant propriety information has been redacted from this document.

102. At 1:43 p.m. on June 13, 2017, Mr. Hawthorne, in his capacity as an agent for Murray, sent an email to Ms. Trimble, in her capacity as an agent for Evanston.

103. A true and accurate copy of this email is attached hereto as **Exhibit 18**.

104. In his June 13, 2017 email, Mr. Hawthorne, in his capacity as an agent for Murray, wrote, in pertinent part, "This [the June 4, 2017 fire at the Property] is an unfortunate incident, but insured has had continuous coverage since 2012." Ex. 18.

105. In his capacity as an agent for Murray, Mr. Hawthorne attached to his June 13, 2017 email to Ms. Trimble, in her capacity as an agent for Evanston, the "General Liability Notice of Occurrence/Claim" for the June 4, 2017 fire loss. *See id.*

106. At 9:39 a.m. on July 5, 2017, Ms. Trimble, in her capacity as an agent for Evanston, sent an email to Ms. Johnson, in her capacity as an agent for Murray.

107. A true and accurate copy of this email is attached hereto as **Exhibit 19**.

108. In her July 5, 2017 email, Ms. Trimble, in her capacity as an agent for Evanston, advised that Evanston would cancel the Policy effective July 19, 2017 for non-compliance with "Binding Subjectivities." *See* Ex. 19.

## COUNT ONE — DECLARATORY JUDGMENT

## (KNOWN LOSS DOCTRINE)

109. Evanston incorporates the allegations pleaded in paragraphs 1 through 108 as if set forth more fully herein.

110.     The "known loss" doctrine "precludes one from insuring against a loss that has already occurred or is ongoing." *Tower Ins. Co. v. Dockside Assocs. Pier 30 LP*, 834 F. Supp.2d 257, 265 (E.D. Pa. 2011) (citing *Rohm & Haas Co. v. Cont'l Cas. Co.*, 566 Pa. 464, 781 A.2d 1172, 1176 (2001) (internal quotations and citations omitted)).

111.     "Because insurance is intended to protect insureds from unknown risks, an insurance policy does not afford protection to an insured who was or should have been aware of the existence of a covered condition when entering into an insurance contract." *Id.* at 265 (citing *Rohm & Haas*, 566 Pa. 464, 781 A.2d at 1177; *Cincinnati Ins. Co. v. Pestco, Inc.*, 374 F. Supp.2d 451, 462–63 (W.D. Pa. 2004)).

112.     Before A for the People, in its capacity as an agent for Murray, submitted Murray's application for insurance to USG, in its capacity as an agent for Evanston, fire had damaged the Property.

113.     Before A for the People, in its capacity as an agent for Murray, submitted Murray's application for insurance to USG, in its capacity as an agent for Evanston, Murray knew that the Property had been damaged by fire.

114.     Before A for the People, in its capacity as an agent for Murray, submitted Murray's application for insurance to USG, in its capacity as an agent for Evanston, A for the People, in its capacity as an agent for Murray, knew that the Property had been damaged by fire.

115.     When Murray was entering into the insurance contract with Evanston, Murray knew that the Property was damaged by fire on June 4, 2017 at or about 3:00 a.m.

116.     When Murray was entering into the insurance contract with Evanston, A for the People, in its capacity as an agent for Murray, knew the Property was damaged by fire on June 4, 2017 at or about 3:00 a.m.

117.     The fact that the Property had been destroyed by fire was material to the risk being insured.

**WHEREFORE**, Plaintiff Evanston Insurance Company demands judgment in its favor and against Plaintiff declaring that Evanston Insurance Company does not owe a defense or coverage to Defendant Adrienne Murray, Defendant Major Rainey, and/or Defendant A & M Real Estate of Pittsburgh, LLC for the fire loss that occurred at or around 3:00 a.m. on June 4, 2017, together with costs, attorney's fees and such further relief as the Court deems just and appropriate.

## COUNT TWO — DECLARATORY JUDGMENT

## (UNILATERAL MISTAKE)

118.     Evanston incorporates the allegations pleaded in paragraphs 1 through 117 as if set forth more fully herein.

119.     Before A for the People, in its capacity as an agent for Murray, submitted Murray's application for insurance to USG, in its capacity as an agent for Evanston, fire had damaged the Property.

120.     Before A for the People, in its capacity as an agent for Murray, submitted Murray's application for insurance to USG, in its capacity as an agent for Evanston, Murray knew that the Property had been damaged by fire.

121.     Before A for the People, in its capacity as an agent for Murray, submitted Murray's application for insurance to USG, in its capacity as an agent for Evanston, A for the People, in its capacity as an agent for Murray, knew that the Property had been damaged by fire.

122.     The fact that the Property had been destroyed by fire was material to the risk being insured.

123.     A basic assumption that Evanston made in entering into the insurance contract with Murray was that the Property had not been damaged by a fire while Murray was submitting her application for insurance.

124.     The essence of the contract into which Evanston entered into with Murray was that the Property was not damaged by fire.

125.     Before Evanston issued the Policy to Murray, Evanston did not know that the Property was damaged by fire on June 4, 2017.

126.     Before Evanston issued the Policy to Murray, Evanston did not know that it had limited knowledge of the facts to which its mistake relates.

127.     Before Evanston issued the Policy to Murray, Evanston reasonably relied on the representations made by Murray regarding the condition of the Property.

128.     Before Evanston issued the Policy to Murray, Evanston reasonably relied on the representations made by A for the People, in its capacity as an agent for Murray, regarding the condition of the Property.

**WHEREFORE**, Plaintiff Evanston Insurance Company demands judgment in its favor and against Plaintiff declaring that Evanston Insurance Company does not owe a defense or coverage to Defendant Adrienne Murray, Defendant Major Rainey, and/or Defendant A & M Real Estate of Pittsburgh, LLC for the fire loss that occurred at or around 3:00 a.m. on June 4, 2017, together with costs, attorney's fees and such further relief as the Court deems just and appropriate.

## COUNT THREE — DECLARATORY JUDGMENT

## (RESCISSION)

129.     Evanston incorporates the allegations pleaded in paragraphs 1 through 128 as if

set forth more fully herein.

130.     The Commonwealth of Pennsylvania recognizes that an insurer has a common

law right to rescind *ab initio* a policy of insurance if the insured makes a material misstatement.

*See Jung v. Nationwide Fire Ins. Co.*, 949 F. Supp. 353, 359-60 (E.D. Pa. 1997).

131.     In the endorsement to the Policy entitled "Pennsylvania Changes – Cancellation

and Nonrenewal," the Policy provides, in pertinent part, as follows:

> This policy may also be cancelled from inception upon discovery that the policy
> was obtained through fraudulent statements, omissions or concealment of facts
> material to the acceptance of the risk or to the hazard assumed by us.

Ex. 17.

132.     In the portion of the Policy entitled "Commercial Property Conditions," the Policy

provides, in pertinent part, as follows:

> This Coverage Part is void in any case of fraud by you as it relates to this
> Coverage Part at any time. It is also void if you or any other insured, at any time,
> intentionally conceal or misrepresent a material fact concerning:

> 1. This Coverage Part;

> 2. The Covered Property;

> 3. Your interest in the Covered Property; or

> 4. A claim under this Coverage Part.

Ex. 17.

133.     Before A for the People, in its capacity as an agent for Murray, submitted

Murray's application for insurance to USG, in its capacity as an agent for Evanston, fire had

damaged the Property.

134.     Before A for the People, in its capacity as an agent for Murray, submitted Murray's application for insurance to USG, in its capacity as an agent for Evanston, Murray knew that the Property had been damaged by fire.

135.     Before A for the People, in its capacity as an agent for Murray, submitted Murray's application for insurance to USG, in its capacity as an agent for Evanston, A for the People, in its capacity as an agent for Murray, knew that the Property had been damaged by fire.

136.     When submitting the application for insurance to Evanston, Murray intentionally concealed the fact that the Property was damaged by fire on June 4, 2017 at or about 3:00 a.m.

137.     When submitting the application for insurance to Evanston, A for the People, in its capacity as an agent for Murray, intentionally concealed the fact that the Property was damaged by fire on June 4, 2017 at or about 3:00 a.m.

138.     When submitting the application for insurance to Evanston, Murray misrepresented that, *inter alia*, the Property had a two-unit dwelling with a store front. *See id.*

139.     When submitting the application for insurance to Evanston, A for the People, in its capacity as an agent for Murray, misrepresented that, *inter alia*, the Property had a two-unit dwelling with a store front. *See id.*

140.     When submitting the application for insurance to Evanston, Murray misrepresented, *inter alia*, the building description as "Barber Shop W/Tenant OCC Unit Above." *See id.*

141.     When submitting the application for insurance to Evanston, A for the People, in its capacity as an agent for Murray, misrepresented, *inter alia*, the building description as "Barber Shop W/Tenant OCC Unit Above." *See id.*

142.     When submitting the application for insurance to Evanston, Murray misrepresented that the condition of the property was "Average." *See id.*

143.     When submitting the application for insurance to Evanston, A for the People, in its capacity as an agent for Murray, misrepresented that the condition of the property was "Average." *See id.*

144.     When submitting the application for insurance to Evanston, Murray misrepresented that her interest in the Property was "owner." *See id.*

145.     When submitting the application for insurance to Evanston, A for the People, in its capacity as an agent for Murray, misrepresented that Murray's interest in the Property was "owner." *See id.*

146.     The concealment of the fact that the Property had been destroyed by fire before A for the People, in its capacity as an agent for Murray, submitted the application for insurance to USG, in its capacity as an agent for Evanston, was material to the risk being insured.

147.     The misrepresentation that the Property had a two-unit dwelling with a store front was material to the risk being insured.

148.     The misrepresentation of the building description as "Barber Shop W/Tenant OCC Unit Above" was material to the risk being insured.

149.     The misrepresentation that the condition of the property was "Average" was material to the risk being insured.

150.     The misrepresentation that Murray's interest in the Property was "owner" was material to the risk being insured.

**WHEREFORE**, Plaintiff Evanston Insurance Company prays that the Court enter an Order rescinding the Policy and declare same to be null, void, and of no effect; and further

demands judgment in its favor and against Defendant Adrienne Murray, together with costs, attorney's fees and such further relief as the Court deems just and appropriate.

## COUNT FOUR — INSURANCE FRAUD

151.     Evanston incorporates the allegations pleaded in paragraphs 1 through 150 as if set forth more fully herein.

152.     18 Pa. C.S.A. §4117(b)(4) provides, in pertinent part, that a person "may not knowingly and with intent to defraud any insurance company, self-insured or other person file an application for insurance containing any false information, or conceal for the purposes of misleading information concerning any fact material thereto."

153.     18 Pa. C.S.A. §4117(g) provides, in pertinent part, that aggrieved insurers may "recover compensatory damages, which may include reasonable investigation expenses, costs of suit and attorney fees. An insurer may recover treble damages if the court determines that the defendant has engaged in a pattern of violating this section."

154.     Before A for the People in its capacity as an agent for Murray, submitted Murray's application for insurance to USG, in its capacity as an agent for Evanston, fire had damaged the Property.

155.     Before A for the People, in its capacity as an agent for Murray, submitted Murray's application for insurance to USG, in its capacity as an agent for Evanston, Murray knew that the Property had been damaged by fire.

156.     Before A for the People, in its capacity as an agent for Murray, submitted Murray's application for insurance to USG, in its capacity as an agent for Evanston, A for the People, in its capacity as an agent for Murray, knew that the Property had been damaged by fire.

157.     When submitting the application for insurance to USG, in its capacity as an agent for Evanston, Murray, through her agent A for the People, knowingly concealed the fact that the Property was damaged by fire on June 4, 2017 at or about 3:00 a.m.

158.     When submitting the application for insurance to USG, in its capacity as an agent for Evanston, Murray, through her agent A for the People, acted with an intent to defraud Evanston by concealing the fact that the Property was damaged by fire on June 4, 2017 at or about 3:00 a.m.

159.     When submitting the application for insurance to USG, in its capacity as an agent for Evanston, A for the People, in its capacity as an agent for Murray, knowingly concealed the fact that the Property was damaged by fire on June 4, 2017 at or about 3:00 a.m.

160.     When submitting the application for insurance to USG, in its capacity as an agent for Evanston, A for the People, in its capacity as an agent for Murray, acted with an intent to defraud Evanston by concealing the fact that the Property was damaged by fire on June 4, 2017 at or about 3:00 a.m.

161.     When submitting the application for insurance to USG, in its capacity as an agent for Evanston, Murray, through her agent A for the People, knowingly misrepresented, *inter alia*, that the Property had a two-unit dwelling with a store front. *See id.*

162.     When submitting the application for insurance to USG, in its capacity as an agent for Evanston, Murray, through her agent A for the People, acted with an intent to defraud Evanston by misrepresenting, *inter alia*, that the Property had a two-unit dwelling with a store front. *See id.*

163.     When submitting the application for insurance to USG, in its capacity as an agent for Evanston, A for the People, in its capacity as an agent for Murray, knowingly misrepresented, *inter alia*, that the Property had a two-unit dwelling with a store front. *See id.*

164.     When submitting the application for insurance to USG, in its capacity as an agent for Evanston, A for the People, in its capacity as an agent for Murray, acted with an intent to defraud Evanston by misrepresenting, *inter alia*, that the Property had a two-unit dwelling with a store front. *See id.*

165.     When submitting the application for insurance to USG, in its capacity as an agent for Evanston, Murray, through her agent A for the People, knowingly misrepresented, *inter alia*, the building description as "Barber Shop W/Tenant OCC Unit Above." *See id.*

166.     When submitting the application for insurance to USG, in its capacity as an agent for Evanston, Murray, through her agent A for the People, acted with an intent to defraud Evanston by misrepresenting, *inter alia*, the building description as "Barber Shop W/Tenant OCC Unit Above." *See id.*

167.     When submitting the application for insurance to USG, in its capacity as an agent for Evanston, A for the People, in its capacity as an agent for Murray, knowingly misrepresented, *inter alia*, the building description as "Barber Shop W/Tenant OCC Unit Above." *See id.*

168.     When submitting the application for insurance to USG, in its capacity as an agent for Evanston, A for the People, in its capacity as an agent for Murray, acted with an intent to defraud Evanston by misrepresenting, *inter alia*, the building description as "Barber Shop W/Tenant OCC Unit Above." *See id.*

169.     When submitting the application for insurance to USG, in its capacity as an agent for Evanston, Murray, through her agent A for the People, knowingly misrepresented that the condition of the property was "Average." *See id.*

170.     When submitting the application for insurance to USG, in its capacity as an agent for Evanston, Murray, through her agent A for the People, acted with an intent to defraud by misrepresenting that the condition of the property was "Average." *See id*

171.     When submitting the application for insurance to USG, in its capacity as an agent for Evanston, A for the People, in its capacity as an agent for Murray, knowingly misrepresented that the condition of the property was "Average." *See id.*

172.     When submitting the application for insurance to USG, in its capacity as an agent for Evanston, A for the People, in its capacity as an agent for Murray, acted with an intent to defraud Evanston by misrepresenting that the condition of the property was "Average." *See id.*

173.     When submitting the application for insurance to USG, in its capacity as an agent for Evanston, Murray, through her agent A for the People, knowingly misrepresented that Murray's interest in the Property was "owner." *See id.*

174.     When submitting the application for insurance to USG in its capacity as an agent for Evanston, Murray, through her agent A for the People, acted with an intent to defraud by misrepresenting that her interest in the Property was "owner." *See id*

175.     When submitting the application for insurance to USG, in its capacity as an agent for Evanston, A for the People, in its capacity as an agent for Murray, knowingly misrepresented that Murray's interest in the Property was "owner." *See id.*

176.     When submitting the application for insurance to USG, in its capacity as an agent for Evanston, A for the People, in its capacity as an agent for Murray, acted with an intent to defraud Evanston by misrepresenting that Murray's interest in the Property was "owner." *See id.*

177.     The concealment of the fact that the Property had been destroyed by fire was material to the risk being insured.

178.     The misrepresentation that the Property had a two-unit dwelling with a store front was material to the risk being insured.

179.     The misrepresentation of the building description as "Barber Shop W/Tenant OCC Unit Above" was material to the risk being insured.

180.     The misrepresentation that the condition of the property was "Average" was material to the risk being insured.

181.     The misrepresentation that Murray's interest in the Property was "owner" was material to the risk being insured.

182.     As of May 23, 2018, Evanston had incurred $64,922.75 in reasonable investigation expenses, costs of suit and attorney fees.

183.     Murray has engaged in a pattern of violating 18 Pa. C.S.A. §4117(g).

184.     A for the People has engaged in a pattern of violating 18 Pa. C.S.A. §4117(g).

185.     Because Murray has engaged in in a pattern of violating 18 Pa. C.S.A. §4117(g), Evanston is entitled to recover treble damages.

186.     Because A for the People has engaged in in a pattern of violating 18 Pa. C.S.A. §4117(g), Evanston is entitled to recover treble damages.

187.     Murray and A for the People are jointly and severally liable for the damages that Evanston has sustained.

**WHEREFORE**, Plaintiff Evanston Insurance Company demands judgment in its favor and against Defendants Adrienne Murray and A for the People, together with costs, attorney's fees and such further relief as the Court deems just and appropriate.

**REBAR BERNSTIEL**

BY:   **/s/ Cynthia L. Bernstiel,  Esquire**
      **CYNTHIA L. BERNSTIEL, ESQUIRE**
      470 Norristown Road, Suite 201
      Blue Bell, PA 19422
      Identification No. 75518
      (484) 344-5340
      (484) 344-5341 (fax)
      cbernstiel@rebarbernstiel.com

      *Attorneys for Defendant*
      *Evanston Insurance Company*

Dated: May 23, 2018